**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **ARDESSA FLOYD, individually and as representatives of a class; DIANNE CARR, individually and as representative of a class; PJ'S DECORATIVE FABRICS, INC., individually and as representative of a class,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CASE NO.: 1:10-CV-164 (WLS)** |
| **CITY OF ALBANY; DR. WILLIE ADAMS, JR., JON HOWARD, DOROTHY HUBBARD, CHRISTOPHER G. PIKE, ROGER B. MARIETTA, BOB LANGSTAFF, JR., TOMMIE POSTELL (all in their official capacities as mayor and/or members of the Board of City Commissioners of the City of Albany);WATER, GAS AND LIGHT COMMISSION OF THE CITY OF ALBANY; BOARD OF WATER, GAS AND LIGHT COMMISSIONERS OF THE CITY OF ALBANY; DR. WILLIE ADAMS, JR., JOANN POPE, CAROL H. FULLERTON, ANDREW J. REID, SR., COMMODORE CONYERS (all in their official capacities as members of the Board of Water, Gas and Light Commissioners of the City of Albany),** | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

NOW COME Plaintiffs, individually and as representatives of a class, and in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction say as follows:

**INTRODUCTION**

The Water Gas and Light Commission of the City of Albany exists to provide essential government services to its rate payers. In January 1999, WGL and the City of Albany approved the formation of and contribution to a trust administered by the Municipal Electrical Association of Georgia ("MEAG"), of which it is a member and from whom WGL purchases the electricity it provides to its rate payers. As of January 31, 2008, the City of Albany and WGL's share of this trust was approximately $70 million.

Beginning in December 2009, WGL became eligible to receive distributions of its share of the trust, subject to express restrictions on the use of such distributions. Under the trust, WGL could only use such distributions as credits to purchase electricity from MEAG, thereby keeping rates low for electrical customers of WGL.

In March 2009, the City of Albany amended its charter to require WGL to transfer two-thirds of WGL's trust distribution to the general fund of the City for the general uses (i.e., non-WGL related uses) of the City. This ordinance violates the express terms of the trust agreement and deprives WGL electrical rate payers of the intended benefit of the trust distributions.

As of the filing of this brief, WGL has unlawfully transferred over $7million of its trust distribution to the City of Albany. Over the period of 2009-2018, WGL is scheduled to unlawfully transfer approximately $60 million to the City of Albany. These

unlawful transfers constitute breach of the trust agreement (to which WGL rate payers are an intended beneficiary), breach of the services contracts between WGL and its rate payers, and violate the Constitution of the State of Georgia. If not enjoined, Defendants continued unlawful conduct will cause irreparable injury to Plaintiffs by depriving them of the benefit (lower rates) the trust disbursement was intended to deliver.

## FACTUAL BACKGROUND

1. On November 18, 2010, Plaintiffs, individually and as representatives of a class, filed a Complaint against Defendants, the City of Albany, Dr. Willie Adams, Jr., Jon Howard, Dorothy Hubbard, Christopher G. Pike, Roger B. Marietta, Bob Langstaff, Jr., Tommie Postell (hereinafter "The City of Albany"); and Water, Gas and Light Commission of Albany, Board of Water, Gas And Light Commissioners of The City of Albany; Dr. Willie Adams, Jr., Joann Pope, Carol H. Fullerton, Andrew J. Reid, Sr., Commodore Conyers (hereinafter "WGL") (The City of Albany and WGL are hereinafter individually and collectively referred to as "Defendants").

2. The Municipal Electrical Association of Georgia (hereinafter "MEAG") was created as a public power entity by an Act of the Georgia General Assembly on March 18, 1975, namely O.C.G.A. § 46-3-110 et seq. MEAG is comprised of forty-nine different municipalities (hereinafter "Participants") each of whom purchase power from MEAG. WGL is one such Participant in MEAG. WGL accounts for approximately 10% of MEAG power allocation.

3. Plaintiffs are residential and/or commercial ratepayers for electrical services provided by WGL. The class that Plaintiffs represent includes approximately 37,000 payers of electrical services within the City of Albany. The vast majority of

WGL's total revenues (i.e., the sale of water, gas and light) come from funds paid by the ratepayers for electrical service provided by WGL. During the 2009-2010 fiscal year, WGL earned total revenues of $104,000,000, approximately $81,600,000 of which came from the sale of electricity to Albany rate payers.

4. Plaintiffs' Complaint arises out of Defendants' unlawful use of funds intended to benefit citizens of Albany who purchase electricity from WGL. Beginning in 1999, WGL approved the contribution of money to the Municipal Competitive Trust dated January 1, 1999 administered by MEAG (the "MCT"). The trust accounts were established in the fear that the electrical industry would be deregulated. By accumulating the funds, MEAG and its participants would be able to stabilize electrical rates and stave off competition. The purpose of the trust was to keep rates low for rate payers.

5. In September 2008, the Defendants approved a first amendment to the Municipal Competitive Trust (the "First Amendment"). The First Amendment authorizes MEAG to apply funds from certain Competitive Trust accounts (including the account of the City of Albany and WGL) for the purpose of lowering Participants' annual generation billings from MEAG during the period of 2009 through 2018.

6. Under the First Amendment, WGL will receive approximately $88,000,000 in distributions over the period of 2009-2018. These distributions are to be used for the benefit of WGL electrical ratepayers. More specifically, according to the MCT, the distributions can be used in only two limited ways: (1) to lower WGL's annual generation billings with MEAG, or (2) pay principal and interest on outstanding MEAG bonds. Either use of this $88 million distribution will have the effect of stabilizing rates of Albany rate payers, like Plaintiffs.

7. On March 24, 2009, the City of Albany unlawfully amended the city charter in an attempt to use MEAG distributions for "general purposes," as opposed to the purposes outlined in the MCT. More specifically, two-thirds of the sums being paid to WGL are being unlawfully transferred to the City of Albany pursuant to the March 24, 2009, Ordinance No. 09-113 (hereinafter the "Ordinance"). The Ordinance, in pertinent part, provides:

> All funds received by the Water, Gas and Light Commission (WG&L) [WGL] from the MEAG Municipal Competitive Agreement created as of January 1, 1999, shall be kept separate from the other funds of WG&L [WGL]. WG&L [WGL] shall maintain custody and control of 33 1/3% of such funds; the balance of such funds shall be made available to the Mayor and Board of Commissioners of the City of Albany. **This requires WG&L [WGL], whether such funds are in the form of credits or otherwise from MEAG to turn over 66 2/3% of such amount to the general fund of the Mayor and Board of Commissioners of the City of Albany one-half ( 1/2) of such amount to be used to meet general obligations of the City of Albany and one-half ( 1/2) of such amount to be managed by the Long Term Financial Plan Committee described in paragraph (6) [13] below.** Without limiting the generality of the foregoing, such MEAG credits in favor of WG&L [WGL] shall result in WG&L [WGL], within three business days of such credit, wire transferring to the City an amount of money equal to 66 2/3% of such credit.

(emphasis added).

8. WGL is currently complying with the ordinance by transferring two-thirds of credits it received from the MCT to the City of Albany. For example, in the 2009-2010 fiscal year ending June 30, 2010, WGL transferred $2,118,571 to the Long Term Financial Planning Committee and transferred $3,117,860 to the City of Albany from the MCT distributions. WGL is continuing to transfer funds to the City of Albany pursuant to the Ordinance.

9. The Ordinance and Defendants' unlawful use of MCT funds for purposes other than the limited purpose set forth in the MCT is unlawful. First, it constitutes a breach of the MCT. Second, it constitutes a breach of contract between WGL and rate payers. Third, it violates the Georgia Constitution as same relates to protecting citizens from a denial of equal protection of the laws and due process of the law. Fourth, it violates the Georgia Constitution at Article IX, Section II Paragraph VI in that it seeks to unlawfully profit from the rate payers of the City of Albany.

10. Further use of the MEAG distributions in a manner not consistent with the MCT will cause Plaintiffs, and the class they represent, immediate and irreparable injury, loss, damage and harm. Plaintiffs request that this Court restrain and enjoin Defendants from using or expending any portion of the MEAG distributions pending final resolution of the matter.

11. Plaintiffs further contend that Defendants are possessed of sums, and in the future will be possessed of additional sums, paid from the MCT to which more than one person lays claim. The unlawful expenditures of such sums pose a clear and present danger to the Plaintiffs' ability to recover the intended benefit of the MEAG distributions. Plaintiffs therefore apply in equity to disgorge the Defendants of any sums unlawfully obtained through the enactment of the Ordinance. The Plaintiffs further request that this Court ultimately enter a final injunction enjoining the Defendants from the further use, transfer or expenditure of any sums paid from the MCT to Defendants in a manner not consistent with the MCT.

12. Plaintiffs requested that Defendants voluntarily interplead into the registry of the Court the sums received to date as well as all sums received in the future from the

MCT whether the sums were received in the form of cash disbursements, credits or otherwise. Defendants have refused Plaintiffs' request.

13. Defendants filed a Notice of Removal with the Court on Friday, December 3, 2010. The Court set the matter for hearing on Plaintiffs' request for Temporary Restraining Order.

**LEGAL ARGUMENT**

Prior to issuing a preliminary injunction and/or temporary restraining order, the Eleventh Circuit requires a movant demonstrate:

1. Substantial likelihood of success on the merits;
2. Threat of irreparable injury if the preliminary injunction is not granted;
3. That such injury outweighs the harm that the preliminary injunction will cause to the opposing party; and
4. That the preliminary injunction is in the public interest.

See 13-65 Moore's Federal Practice - Civil § 65.22; see also GSW, Inc. v. Long County, 999 F.2d 1508, 1518 (11th Cir. 1993)(upholding preliminary injunction requiring county to comply with terms of contract with waste management company regarding operation of solid waste disposal facility); Johnson v. United States Dep't of Agric., 734 F.2d 774, 781 (11th Cir. 1984) (preliminary injunction was properly granted when plaintiffs showed likelihood of success on merits on their due process claims and that wrongful ejectment of plaintiffs from their homes was irreparable injury, which outweighed any injury to government or public interest).

While a movant may not normally seek an injunction merely to insure that assets will be available to satisfy a judgment, a district court may issue a preliminary injunction

to freeze the defendant's assets in a suit that seeks some equitable relief and involves the defendant's assets, especially when the public interest is at stake. SEC v. ETS Payphones, Inc., 408 F.3d 727, 734 (11th Cir. 2005). When the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested. See, e.g., United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489 (4th Cir. Md. 1999) ("When interim equitable relief is authorized and the public interest is involved, the doctrine applies that courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.") In exercising such equitable powers, the Court must examine the relationship between the asset and the conduct. SEC v. ETS Payphones, Inc., 408 F.3d at 734.

Here, the Court should enter a Temporary Restraining Order and Preliminary Injunction enjoining Defendants from further using sums disbursed from the MCT pending final resolution of this matter. As shown below, Plaintiffs have satisfied the four elements this Court must consider in determining whether injunctive relief was appropriate.

**1. Substantial likelihood of success on the merits.**

While a trial court must assess the likelihood that the movant will ultimately succeed on the merits, a showing of likelihood of success is not dispositive in determining whether to grant injunctive relief. See 13-65 Moore's Federal Practice -

Civil § 65.22. In this case, Plaintiff makes claims for breach of contract and claims for violations of the Georgia Constitution. Plaintiffs have a substantial likelihood of prevailing on all theories of recovery.

*Breach of Contract* - The Defendants have violated the express provisions of the MCT to which Plaintiffs are the intended beneficiaries. See O.C.G.A. § 9-2-20 ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promissor on the contract."); see also Lee v. Petty, 133 Ga. App. 201, 210 (1974) (contract between state highway department and construction company by which company undertakes to provide for safety of the public during construction of project inures to the benefit of the public, and a member of the public injured as a result of company's negligence in failing to do so may sue company directly).

Here, Defendants are receiving substantial distributions from MEAG pursuant to the MCT. The MCT expressly limits the manner in which the distributions can be used. Defendants are not using the distributions in the manner allowed by the MCT. Particularly, Defendants are not using the distributions to lower electrical billings or in connection with payment on MEAG bonds. Instead, Defendants are using the sums for general purposes not allowed by the MCT. Failure to use the MCT distributions consistent with the express terms of the MCT deprives rate payers of the benefit of such funds. Defendants' actions constitute breach of contract, which is causing Plaintiffs, and the class they represent, damage.

*Constitutional Violations* - The Ordinance violates at least three provisions of the Constitution of the State of Georgia, namely (a) Article 1, Section 1, Paragraph 2 providing "no person shall be denied the equal protection of the laws"; (b) Article 1,

Section 3, Paragraph 1 providing "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid"; (c) Article 1, Section 1, Paragraph 1 providing "no person shall be deprived of life, liberty or property except by due process of law"; and (d) Article IX, Section II, Paragraph VI providing that fees for services provided by governments within local government districts may not exceed the cost of providing such services.

(1) *Equal Protection.* In this case, Defendants are denying equal protection of the laws to WGL rate payers who purchase electricity from WGL. The money to fund the MCT originated with WGL electrical rate payers. The proper use of such money is to keep rates low for WGL rate payers. By raiding two-thirds of the MCT distributions for its own benefit, the City of Albany is depriving rate payers of the benefit of such money and unilaterally granting such benefit to those who neither contributed to the trust fund or purchase electricity from WGL.

(2) *Unlawful Taking and Due Process.* WGL operates for the benefit of the citizens of Albany. The MCT distribution constitutes property of the citizens of Albany in that it is to be used by WGL to keep rates low for rate payers. Only WGL rate payers contributed to the MCT and only WGL rate payers are intended to benefit from the MCT. By raiding two-thirds of the MCT distributions for its own benefit, the City is taking property of WGL rate payers without any compensation to WGL rate payers for such property and without due process.

(3) *Unlawful Profit.* The Georgia Constitution prohibits local governments from charging for services in an amount exceeding the costs of providing such services. GA Constitution, Article IX, Section II, Paragraph VI. Here, WGL only provides power to

certain districts within the City. Residents of those districts, however, are required to purchase power from WGL (i.e., they have no choice). By raiding WGL accounts of approximately $60million over a 10 year period, the City is forcing WGL to charge its rate payers amounts for electricity in excess of WGL's costs of providing such services. These excess charges violate the Georgia Constitution.

**2. Threat of Irreparable Injury or Harm.**

An injury is "irreparable" only if it cannot be undone through monetary remedies. Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. Fla. 1983). Injuries that have been found to be irreparable include deprivation of constitutional rights. Id. (court held deprivation of free speech constitutes irreparable injury); Doe v. Duncanville Indep. Sch. Dist., 994 F.2d 160, 166 (5th Cir. 1993) (court held irreparable injury resulting from violation of Establishment Clause); Nelson v. NASA, 530 F.3d 865 (9th Cir. 2008) (court held that the personnel had raised serious questions as to the merits of their Fourth Amendment claims and the balance of hardships tipped sharply in their favor thereby making injunctive relief appropriate).

Undoubtedly, Defendants will argue that Plaintiffs cannot satisfy their burden on this element by arguing that Plaintiffs have an adequate remedy at law - - a monetary judgment. However, as shown above, a district court may issue a preliminary injunction to freeze the defendant's assets in a suit that seeks some equitable relief and involves the defendant's "specific" assets, especially when the public interest is at stake. This holding is especially true when Plaintiffs make a cognizable claim to specific assets as opposed to general assets of the Debtor.

Here, Plaintiffs do not have an adequate remedy at law short of injunctive relief. Plaintiffs seek the disgorgement of sums that Defendants have unlawfully transferred to the City of Albany pursuant to the Ordinance. Plaintiffs' Complaint seeks final injunctive relief compelling Defendants to use all sums paid to them from the MCT for purposes allowed under the MCT. In other words, Plaintiffs seek use of the monies paid to it by MEAG for their stated and lawful purpose, electrical billing reductions.

Defendants have received significant sums from the MCT and are scheduled to receive additional sums in the future. By transferring the sums paid from the MCT to the City of Albany General Account, Defendants have violated the MCT. Further transfers of said sums from the MCT to the City of Albany constitute further violations of the MCT. By seeking equitable relief in the form of disgorgement and injunctive relief, Plaintiffs' claim is not so much directed at monetary relief as it is to a specific asset; that asset being the sums received and to be received in the future by the Defendants from the MCT. The public interest is at stake in this matter. Plaintiffs represent members of the Albany community that in many cases struggle to pay for electrical services on a daily basis. The public interest weighs in favor of the Court enjoining the further transfer and/or dissipation of funds being transferred from the MCT to Defendants.

**3. The injury outweighs the harm that the preliminary injunction will cause to the opposing party and the public interest weigh in favor of granting a preliminary injunction.**

The "balance of hardships test" favor Plaintiffs. The harm to the public is included in this analysis. See Heather K. v. City of Mallard, 887 F. Supp. 1249, 1259 (N.D. Iowa 1995) (The balance of harm analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested

parties, including the public). In Mallard, the court identified three factors to be weighed in balancing the hardships: (1) the threat to each of the parties' rights that would result from granting or denying the injunction; (2) the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction; and (3) whether the defendant has already voluntarily taken remedial action. Id. at 1259. The court went on to hold the "public interest" factor invites the court to make broad observations about conduct that is generally recognizable as costly or injurious. Id. at 1260.

Here, the injury that the Plaintiffs and the putative class suffers and is suffering outweighs any harm a restraining order and injunction will cause Defendants. First, if an injunction is not entered Plaintiffs will lose the ability to insure that specific funds paid by MEAG to WGL are used for the specific purposes outlined in MCT. Second, the potential economic harm to the putative class, i.e., individual ratepayers, outweighs any economic harm that might result to the City. If the funds are continued to be transferred from the MCT pursuant to the Ordinance, the ratepayers will inevitably face rate increases for electrical services. Finally, Defendant has refused to voluntarily take remedial action, despite Plaintiffs' repeated requests that they do so. The public interest fact weighs heavily in favor of Plaintiffs as members of the community.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court temporarily and preliminarily enjoin Defendants from any use of the MCT distribution pending resolution of this matter.

Respectfully submitted this the 8th day of December 2010.

FLYNN PEELER & PHILLIPS, LLC

**/s/Patrick S. Flynn**
Patrick S. Flynn
Georgia State Bar No. 004765
**/s/Charles E. Peeler**
Charles E. Peeler
Georgia State Bar No. 570399
Post Office Box 7 (31702)
517 West Broad Avenue
Albany, GA 31701
Tel: (229) 446-4886

MARGESON, FLYNN & ASSOCIATES

Robert M. Margeson, III
Georgia State Bar No: 470500
317 West Tift Avenue
Albany, GA 31701
Tel: (229) 883-5350
Fax: (229) 883-5391

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **ARDESSA FLOYD, individually and as representatives of a class; DIANNE CARR, individually and as representative of a class; PJ'S DECORATIVE FABRICS, INC., individually and as representative of a class,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CASE NO.: 1:10-CV-164 (WLS)** |
| **CITY OF ALBANY; DR. WILLIE ADAMS, JR., JON HOWARD, DOROTHY HUBBARD, CHRISTOPHER G. PIKE, ROGER B. MARIETTA, BOB LANGSTAFF, JR., TOMMIE POSTELL (all in their official capacities as mayor and/or members of the Board of City Commissioners of the City of Albany);WATER, GAS AND LIGHT COMMISSION OF THE CITY OF ALBANY; BOARD OF WATER, GAS AND LIGHT COMMISSIONERS OF THE CITY OF ALBANY; DR. WILLIE ADAMS, JR., JOANN POPE, CAROL H. FULLERTON, ANDREW J. REID, SR., COMMODORE CONYERS (all in their official capacities as members of the Board of Water, Gas and Light Commissioners of the City of Albany),** | ) | |
| **Defendants.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2010, I caused a true and correct copy of the foregoing PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION to be electronically filed through the Court's CM/ECF system which shall cause service to be electronically made upon the following:

Mr. C. Nathan Davis
City Attorney City of Albany
201 W. Oglethorpe Blvd., Ste 355-A
P. O. Box 447
Albany, Georgia 31701

Mr. B. Samuel Engram, Jr.
415 Pine Avenue, Suite 102
Albany, Georgia 31701

This the 8th day of December 2010.

FLYNN PEELER & PHILLIPS, LLC

**/s/Patrick S. Flynn**
Patrick S. Flynn
Georgia State Bar No. 004765
**/s/Charles E. Peeler**
Charles E. Peeler
Georgia State Bar No. 570399
Post Office Box 7 (31702)
517 West Broad Avenue
Albany, GA 31701
Tel: (229) 446-4886