**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| ARDESSA FLOYD, *individually and as representative of a class, et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | CASE NO.: 1:10-CV-164 (WLS) |
| CITY OF ALBANY, *et al.*, | : | |
| Defendants. | : | |

**ORDER**

Before the Court is Plaintiffs' Motion to Remand, Request for Hearing, and Motion for Attorney's Fees. (Doc. 45). For the following reasons, Plaintiffs' Motion to Remand, Request for Hearing, and Motion for Attorney's Fees (Doc. 45) is **DENIED WITHOUT PREJUDICE**.

**PROCEDURAL BACKGROUND**

The above-captioned matter is a purported class action. According to the Amended Complaint, the purported class is comprised of "all persons who paid rates for electricity to [the Water, Gas and Light Commission of the City of Albany ("WGL")] at anytime from March 24, 2009 (the date of the [alleged] unlawful amendment to the city charter) to the present." (Doc. 10 at ¶ 41). Plaintiffs claim that "[t]he customers represented … include thousands of persons, businesses, churches, and non-profits." (Doc. 10 at ¶ 4).

The case was removed by Defendants from the Superior Court of Dougherty County, Georgia, to this Court on December 3, 2010. (Doc. 1). Defendants asserted in their Notice of Removal that this Court had jurisdiction over the purported class action pursuant to 28 U.S.C. § 1332(d)(2). (Doc. 1 at ¶¶ 5, 11). In relevant part, the statute provides that "[t]he district courts

shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). In their Notice of Removal, Defendants stated that while at least one Defendant, the City of Albany, is a Georgia citizen, at least one member of the purported class, MillerCoors LLC, is not a Georgia citizen. (Doc. 1 at ¶¶ 6-9). Defendants also stated that the amount in controversy is well in excess of the $5 million statutory threshold. (Doc. 1 at ¶ 10).

On January 11, 2011, Plaintiffs filed a Motion to Remand. (Doc. 34). Plaintiffs' Motion contends that Defendants have wrongly asserted this Court's jurisdiction over the matter, as federal jurisdiction should have been barred by at least one of the Class Action Fairness Act's ("CAFA") three provisions for remanding a case to state court. Plaintiffs also request attorney's fees incurred as a result of Defendants' removal of the case. (Doc. 34, ¶¶ 9-10). Plaintiffs' Motion to Remand expressly presumes that Defendants would not challenge the notion that two-thirds or more of the purported class members are Georgia citizens. (Doc. 34 at ¶ 2 ("[I]t is presumably undisputed that more than two-thirds of the class members are citizens of the State of Georgia.")).

Defendants, however, did not concede the point in their Response. (Doc. 40 at 4 ("Plaintiffs assert that the Georgia citizenship of the purported class members is 'presumably undisputed,' … but offer absolutely no supporting evidence.")). Instead, Defendants argue that Plaintiffs' Motion was untimely, Plaintiffs had waived their right to challenge the Court's jurisdiction by seeking relief from and taking affirmative action in the Court, and that Plaintiffs have failed to carry their burden regarding the local controversy exception as Plaintiffs have not

provided any evidence demonstrating that two-thirds or more of the purported class members are citizens of Georgia.

The Court ordered limited discovery on the issue of jurisdiction and required both parties to submit evidence in support of their respective positions to the Court. (Doc. 51). The discovery period has now closed and both parties have filed evidence and briefs with the Court. (*See generally* Docket). Thus, the Motion is now fully briefed and ripe for ruling.

## DISCUSSION

### I. Legal Background

Federal Courts are "courts of limited jurisdiction … possess[ing] only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Accordingly, '[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.'" Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (quoting Marathon Oil Co. v. Ruhrgas, 145 F.3d 211, 216 (5th Cir. 1998)) (alteration in original). "Indeed, such an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts … as well as 'offends fundamental principles of separation of powers.'" *Id.* at 409-10 (citing Victory Carriers, Inc. v. Law, 404 U.S. 202, 212 (1971) and quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)) (citation omitted). "It follows from this principle of limited jurisdiction that a federal court has an independent obligation to review its authority to hear a case before it proceeds to the merits." Mirage Resorts, Inc. v. Quiet Nacelle Corp., 206 F.3d 1398, 1400-01 (11th Cir. 2000) (citing Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 18 & n.17 (1951)). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." Univ. of S. Ala., 168 F.3d at 410. This notion

is codified in Federal Rule of Civil Procedure 12(h)(3), which states that a court "must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3).

Congress enacted CAFA to encourage federal jurisdiction over interstate class action lawsuits. CAFA contains a basic jurisdictional test which requires a removing defendant to prove minimum diversity and an aggregated amount in controversy of $5,000,000 or more. 28 U.S.C. § 1332(d). The parties agree that Defendants' removal of this case to federal court was proper under those specific criteria. (Doc. 44 at 1). Plaintiffs, however, contend that this case falls within one of CAFA's three exceptions to federal jurisdiction.

Under the "local controversy" exception, a court "shall decline to exercise jurisdiction" when: (1) greater than two-thirds of the members of the putative class are citizens of the state in which the action was filed; (2) at least one defendant is a defendant from whom members of the putative class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the last three years preceding the filing of the instant class action. 28 U.S.C. § 1332(d)(4)(A).

Under the "home state exception," a court "shall decline to exercise jurisdiction" when two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

Finally, under the "discretionary jurisdiction" exception, a district court may, "in the interests of justice and looking at the totality of the circumstances, decline to exercise minimal diversity jurisdiction over a class action in which all of the following are true: (1) more than one-third of the members of all proposed plaintiff classes, in the aggregate, are citizens of the state in which the action was originally filed; (2) fewer than two-thirds of the members of all proposed plaintiff classes, in the aggregate, are citizens of the state in which the action was originally filed; and (3) the "primary" defendants are citizens of the state in which the action was originally filed. 28 U.S.C. § 1332(d)(3). In exercising its discretion, the court must consider all of the following six factors: (1) whether the claims involve matters of national or interstate interest (28 U.S.C. § 1332(d)(3)(A)); (2) whether the claims will be governed by laws of the state in which the action was originally filed or by the laws of other states (28 U.S.C. § 1332(d)(3)(B)); (3) whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction (28 U.S.C. § 1332(d)(3)(C)); (4) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants (28 U.S.C. § 1332(d)(3)(D)); (5) whether the number of citizens of the state in which the action was originally filed in all proposed plaintiff classes, in the aggregate, is substantially larger than the number of citizens from any other state, and the citizenship of the other members of the proposed class is dispersed among a substantial number of states (28 U.S.C. § 1332(d)(3)(E)); and (6) whether, during the three-year period preceding the filing of that class action, one or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed (28 U.S.C. § 1332(d)(3)(F)). If the requirements for exercising discretion are met, and if the factors favor a state court proceeding rather than a federal one, the court may, in its discretion, "decline to exercise" the minimal diversity subject matter jurisdiction provided by CAFA.

In this case, the parties only contest the citizenship of members of the class. Plaintiffs assert that more than two-thirds of the class is composed of Georgia citizens. Defendants argue that Plaintiffs offer no evidence to support this claim, and that regardless, Plaintiffs' motion was untimely and Plaintiffs' actions before the Court resulted in a waiver of their right to challenge the Court's jurisdiction. (Doc. 40 at 7).

## II. Defendants' Statutory Interpretation of CAFA:

Defendants' argument regarding timeliness is as follows: 28 U.S.C. § 1447(c) establishes that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Plaintiffs filed their motion thirty-nine days after removal to federal court. Therefore, Plaintiffs' motion is untimely unless it is based on a lack of subject matter jurisdiction.

At this point, the rabbit hole begins to plummet. Defendants then assert that the exceptions carved out in CAFA are not exceptions to federal subject matter jurisdictions, but instead define "defects in connection the removal process" and are thus subject to the thirty-day time limit of § 1447(c). (Doc. 40 at 6).

Defendants derive this conclusion from a structural comparison of 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1332(a). CAFA does not include its exceptions within the specific statutory provision that provides subject matter jurisdiction, in the manner of § 1819(b)(2)(A). Defendants make an intuitive hop and interpret this distinction to mean that Congress did not intend to provide an exception to subject matter jurisdiction. Instead, the exceptions set out in the CAFA fall within the "defect other than lack of subject matter jurisdiction" category and must be raised within the thirty-day time limit.

Defendants' innovative interpretation is interesting. However, it flies directly in the face of 11th Circuit precedent, Congressional intent, and the language of the statute itself.

The first canon of statutory construction is that courts should always begin the process of legislative interpretation, and should often end it as well, with the words of the statute. *See* Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). In other words, "when the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) (quoting Rubin v. U.S., 449 U.S. 424, 430 (1981)). Thus, the plain meaning of the statute controls unless it is ambiguous, it would lead to an absurd result, or there is clear evidence that Congress intended a different interpretation. *See* Moore v. American Fed'n of Television & Radio Artists, 216 F.3d 1236, 1244 & n.17 (11th Cir. 2000).

Here, the CAFA's "local controversy" and "home state" exceptions provide that "[a] district court *shall* decline to exercise jurisdiction…" 28 U.S.C. § 1332(d)(4) (emphasis added). The final exception, however, states "a district court *may*…decline to exercise jurisdiction…" 28 U.S.C. § 1332(d)(3) (emphasis added). The use of the word "shall" unambiguously indicates a required action, whereas the exception in § 1332(d)(3), through the use of the word "may," underscores that particular section's discretionary nature. While Defendants may prefer a reading of the statute that replaces 'shall' with 'should,' the plain language of § 1332 requires the Court to recognize this distinction. The language of the statute mentions nothing of defects in the removal process. It simply states – and means – that the court shall decline federal jurisdiction when the associated conditions are met. Defendants' interpretation is contrary to the words of the statute.

When the plain language of a statute is clear, there is no need to examine the legislative history, but the Court is nevertheless compelled to do so for the sake of completeness. The Senate Judiciary Committee Report on the Class Action Fairness Act of 2005 provides the legislative intent behind the jurisdictional statute implicated in this case, 28 U.S.C. § 1332. *See* S. Rep. No. 109-14 (2005), *available at* http://www. gpo.gov/fdsys/pkg/CRPT-109srpt14/pdf/CRPT-109srpt14.pdf. The Senate Judiciary Committee intended § 1332(d) "overall … to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications," *id.* at 35, and stated that "the core concept of the bill is that class actions filed against defendants outside their home state are subject to federal jurisdiction." *Id.* at 36. The Committee instructed that § 1332(d)'s "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed." *Id.* at 43. However, the Committee added that "subsection[] … [1332](d)(4)(B) address[es] the jurisdictional principles that will apply to class actions filed against a defendant in its home state," *id.* at 36 (emphasis added), stating that "for cases in which two-thirds or more of the members of the plaintiff class and the primary defendants are citizens of the state in which the suit was filed, subsection 1332(d)(4)(B) states that *federal jurisdiction will not be extended*" and that "[s]uch cases will remain in state courts … since virtually all of the parties in such cases (both plaintiffs and defendants) would be local, and local interests therefore presumably would predominate." *Id.* (emphasis added). Similarly, with regards to § 1332(d)(4)(A), the Committee stated that "[t]his subsection *requires that federal diversity jurisdiction be declined* if the proponents of that view clearly demonstrates that each of every of the…criteria are satisfied in the case at issue." *Id.* at 39 (emphasis added). Defendants' interpretation therefore goes against Congressional intent.

Finally, Defendants' understanding of the differences between 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1332 runs contrary to that of the 11th Circuit. In Evans v. Walter Indus., Inc., 449 F.3d 1159 (11th Cir. 2006), the Court, in discussing the exceptions to federal jurisdictions, stated that the statutes and statutory frameworks of 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1332 were "very similar," and modeled the shifting of the burden of proofs for federal jurisdiction in 28 U.S.C. § 1332 after that of 12 U.S.C. § 1819(b)(2)(A). Evans, 449 F.3d at 1165. Thus, Defendants' interpretation of § 1332's exceptions must be rejected.[1]

Based on the foregoing, the Court holds that the CAFA exceptions do not define "defects in the removal process" but instead require district courts to decline subject matter jurisdiction. As such, CAFA exceptions are exceptions to federal subject matter jurisdiction, and Plaintiff is not restricted by the strict 30-day period set forth in 28 U.S.C. § 1447(c) in seeking to remand the case for lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(h)(3) requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Thus, if at any time a district court determines that one of the CAFA exceptions applies, it must remand the case based on lack of subject matter jurisdiction to the state court. 28 U.S.C. § 1332.

## III. Citizenship of the Class Members

In addition to the waiver and untimeliness arguments, Defendants also assert that Plaintiffs have failed to prove that either the "local controversy" or the "home state" apply through any evidence or credible arguments.

[1] Defendants' waiver argument must also be rejected. As Plaintiff points out, each of the cases cited by Defendants addresses a plaintiff's failure to remand when there exists a procedural defect in the removal filed with the Court or subject matter jurisdiction still existed. In the instant action, as discussed above, no procedural defect in the removal exists – rather, Plaintiffs challenge removal based on exceptions to federal jurisdiction as set forth in 28 U.S.C. § 1332.

As the party seeking to remand the case to state court, Plaintiffs bear the burden of proving the requirements of the local controversy or home state exceptions. *See* Evans, 449 F.3d at 1164-65. While each exception specifies different criteria to be satisfied, both require that the plaintiff first prove that over two-thirds of the class members are citizens of the state in which the action was filed. Plaintiffs must establish the exceptions by a preponderance of the evidence. *See also* Lowery v. Alabama Power Co., 483 F.3d 1184, 1208-1211 (11th Cir. 2007) (applying a preponderance standard in the CAFA removal context, and discussing the difficulty of applying such a standard when bare pleadings are the only source of facts). Following examination of CAFA's legislative history, the Eleventh Circuit noted that "Congress contemplated broad federal court jurisdiction," and "intended the local controversy exception to be a narrow one, with all doubts resolved in favor of exercising jurisdiction over the case." Evans, 449 F.3d at 1163-64 (internal quotations omitted).

Citizenship must be determined at the time the case is filed. *See* 28 U.S.C. § 1332(d)(7). Citizenship in the jurisdictional context is equivalent to “domicile.” McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002); see also Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954) (stating that with respect to diversity jurisdiction, “citizenship has the same meaning as domicile”). “A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.” McCormick, *supra*, 293 F.3d at 1257-58. Thus, domicile requires the demonstration of two factors: residence and intention to remain. Domicile is not “synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous

residence." Molinos Valle Del Cabao, C. Por A. v. Lama, 633 F.3d 1330, 1341-1342 (11th Cir. 2011).[2]

In order to prove that two-thirds of the plaintiff class is composed of Georgia citizens, Plaintiffs make a multi-pronged argument. First, Plaintiffs argue that the Court should adopt a "common sense" approach in making determinations for CAFA exceptions. Plaintiffs assert that they narrowly tailored the putative class to those persons who have paid electrical rates to Defendant WG&L from March 24, 2009 to present, assuming that only individuals and entities in the Albany, GA, area pay electrical rates to WG&L. Plaintiffs ask the Court to make the assumption that "at least two-thirds of such individuals and business are citizens of Georgia." Moreover, Plaintiff asserts that the very nature of the action – charges and use of certain refund money by a local municipally owned utility company – do not involve matters of national or interstate interest, but instead implicate only local laws in Georgia, and thus fall within the exclusions of CAFA.

While Plaintiffs state that no additional evidence is required to demonstrate that more than two-thirds of the potential class is composed of Georgia citizens, the Court requested additional evidence regarding citizenship in its May 26, 2011 Order. In response, Plaintiffs submitted an affidavit by legal assistant Kimberly J. Burke on August 9, 2011. (Doc. 55-1). Burke avers that she examined a list of ratepayers that receive their bill for electrical services at an address different from the address where electrical services are provided. (*Id.* at 1). The total

[2] Plaintiffs cite to Preston v. Tenet Healthsystem Memorial Med. Center, 485 F.3d 793 (5th Cir. 2007) to support the argument that evidence of residence is "prima facie proof of his domicile." *Id.* at 799. However, the Court in Preston found that such an approach "gives undue attention to the naked statements of law as opposed to the substance of relevant opinions…[Plaintiffs] still fail to establish the type of residence information reviewed in other circuits employing the presumption that a person's residence forms an adequate basis for inferring citizenship unless contested with sufficient evidence." *Id.* at 800. The various Circuit decisions cited in Preston made decisions regarding citizenship based on the whole record and often in the absence of a challenge to jurisdiction. *Id.* Thus, this Court does not find Plaintiffs' citation of a single phrase from Preston convincing as to the evidentiary standard required to establish domicile.

number of such entities or individual was 7,223. (*Id.* at 1). Out of these entities or individuals, 569 had addresses outside of the State of Georgia. (*Id.* at 2). Assuming that the total number of class members is 86,666, Burke determined that the percentage of ratepayers that are not in the State of Georgia is .66%. (*Id.* at 2). Therefore, the number of ratepayers that receive a bill for electrical service in the State of Georgia is 99.34%. Based on this evidence, Plaintiffs' argument is if 99.34% of the ratepayers are Georgia residents, then surely two-thirds of the entire plaintiff class is composed of Georgia citizens. (Doc. 44 at 7-8).

Unfortunately, several issues exist with Burke's affidavit, both legally and factually. As stated above, residence in the absence of any other evidence does not establish domicile. "One may temporarily reside in one location, yet retain residence in another." Molinos, 633 F.3d at 1341-1342. Various district courts in the 11th Circuit have held that proof of residence, such as mailing addresses or address records, without additional evidence, are insufficient to establish citizenship. *See, e.g.*, Grills v. Phillip Morris USA, Inc., 645 F.Supp.2d 1107, 1113 (M.D.Fla. 2009); Handforth v. Stenotype Inst. of Jacksonville, Inc., 2010 WL 55578 (M.D.Fla. Jan. 4, 2010). Thus, the addresses for billing and service alone do not prove citizenship.

Defendants raise several issues with the factual basis of Burke's affidavit. The class contains corporations, which are considered citizens of their places of incorporation and principal places of business. 28 U.S.C. § 1332(c)(1). Thus, as Defendants note, these corporations' local addresses offer no assistance in determining citizenship. (Doc. 40 at 17).

Moreover, Defendants filed an affidavit by John Vasant, the director of Fiscal Affairs for Defendant WG&L, on August 24, 2011 that raises substantial factual issues with the numbers that form the basis of Burke's affidavit. (Doc. 62). First, Vasant states that the addresses provided do not indicate citizenship, as information related to citizenship is not requested by

WG&L. (Doc. 62, ¶¶ 5,6). Vasant also states that the class size relied upon by Burke, 86,666 is only an approximation and "contains a certain amount of overlapping and duplication." (Doc. 62, ¶ 8). Vasant questions the assumptions Burke made to arrive at the number of persons or entities who received their bill at an address located outside of Georgia, stating, "[i]t is erroneous to reach conclusions about the percentage of putative class members who receive a bill for electrical service outside Georgia as a whole by comparing a total from one day in July 2011 to an approximate number of putative class members over the entire putative class period (i.e., March 24, 2009 to the filing date of the complaint)." (Doc. 3, ¶ 3). In essence, Defendants are stating that Plaintiffs' methodology in arriving at the specific percentages claimed in Burke's affidavit is flawed.

The Court agrees with Defendants. Plaintiffs' arguments, upon careful review and consideration, are not persuasive, especially in light of the 11th Circuit's decision in Evans. Even if the Court assumes Plaintiffs' numerical calculations of residency are accurate, the Court is still left guessing as to the citizenship status of the class. This evidence at most shows that the residents, because of their Georgia mailing addresses, may be Georgia citizens. Plaintiffs have not carried their burden of demonstrating that more than two-thirds of the class is composed of Georgia citizens as required by both the "home state" and "local controversy" exceptions. Moreover, the absence of credible evidence does not allow the Court to draw conclusions about even one-third of the class, under the discretionary jurisdiction exception. Plaintiffs' requested presumption – that two-thirds of the class are citizens of Georgia – would require the Court to engage in guesswork that is impermissible under Evans. *See* Evans, 449 F.3d at 1166.

Despite Plaintiffs' failure to present a credible estimate of the percentage of the plaintiff class who are citizens of Georgia, "the common sense" standard strongly suggests that this case

is a local controversy. It is difficult to conceive how the citizenship requirement under at least the discretionary jurisdiction exception – that more than one-third but less than two-thirds of the putative class members be Georgia citizens – would not be met here, in a dispute involving the Water, Gas and Light Commission of the City of Albany. However, the Court is bound by Evans and the "citizenship" standard plainly set out in the statute. Therefore, the Court holds that the exceptions set forth in CAFA have not been established and thus do not apply. The case remains in federal court. This ruling shall have no preclusive effect and the Court will accept future filing of evidence demonstrating the citizenship of the plaintiff class consistent with applicable law and Rules.

## IV. Attorney's Fees

The Court finds that, based on the evidence provided, Defendants have properly removed the case. Therefore, Plaintiffs' requests for attorney's fees are denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand, Request for Hearing, and Motion for Attorney's Fees (Doc. 45) is **DENIED WITHOUT PREJDUCE**.

**SO ORDERED**, this 30th day of September, 2011.

**/s/ W. Louis Sands**
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**